

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XCIIXXXXXXXSON
ATTORNEY GENERAL

Honorable W. Lee O'Daniel
Governor of Texas
Austin, Texas

Dear Governor O'Daniel:

Opinion No. 0-2845
Re: Sale of mineral interest in
State School land by the Gov-
ernor to the Federal Govern-
ment.

Your letter of October 21, 1940, requests the opinion of this department as to whether Article 5245 of the Revised Civil Statutes of Texas confers upon the Governor authority to dispose of the minerals in certain sections of land, located in El Paso County, Texas. Your letter reads as follows:

"The United States Government is acquiring 51,300 acres of land immediately adjacent to Fort Bliss, El Paso County, Texas, for the enlargement and improvement of the military post there. The authority under which this action is taken makes it necessary that a fee simple title be acquired. This land is all school land and the State of Texas owns the mineral interests in quite a number of sections of this land. Your opinion is respectfully requested as to whether Article 5245 of the Revised Civil Statutes of Texas confers upon the Governor authority to make disposition of the mineral interests in this land for this purpose. If your conclusion on that proposition is in the affirmative, I shall appreciate your outlining the proper procedure to effectuate this sale, including the process of the valuation of the land, etc."

We assume from the facts stated in your letter that the minerals you refer to are those contained within lands set apart by the Constitution of Texas and by the Settlement Act of 1900 (Art. 5416, R.C.S. of 1925) to the Public Free School Fund. Until 1931 it was provided by law that upon sale of these lands all minerals should be reserved to the Public Free School Fund. (Art. 5310, R.C.S. 1925).

It has been decided in Lemar v. Garner, 121 Tex. 502,

50 S. W. (2) 769, that upon a sale of school land with reservation of minerals, the title to the minerals does not pass to the purchaser, but that title to the minerals remains in the State for the exclusive benefit of the Public Free School Fund.

Articles 5242 and 5245 provide:

"Article 5242. The United States Government through its proper agent, may purchase, acquire, hold, own, occupy and possess such lands within the limits of this State as it deems expedient and may seek to occupy and hold as sites on which to erect and maintain light houses, forts, military stations, magazines, arsenals, dock yards, custom houses, post offices and all other needful public buildings, and for the purpose of erecting and constructing locks and dams, for the straightening of streams by making cutoffs, building levees, or for the erection of any other structures or improvements that may become necessary in developing or improving the waterways, rivers and harbors of Texas and the consent of the Legislature is hereby expressly given to any such purchase or acquisition made in accordance with the provisions of this law."

"Article 5245. When this State may be the owner of any land desired by the United States for any purpose specified in this title, the Governor may sell such land to the United States, and upon payment of the purchase money therefor into the Treasury, the Land Commissioner, upon the order of the Governor, shall issue a patent to the United States for such land in like manner as other patents are issued."

Unless the foregoing statutes, which on their face would seem to authorize the Governor to sell the land in question, fail to meet constitutional requirements, it must necessarily be held that you are authorized by those statutes to sell lands and minerals dedicated to the Public Free School Fund.

However, Section 4 of Article 7 of the Texas Constitution provides:

"The lands herein set apart to the Public Free School fund, shall be sold under such regulations, at such times, and on such terms as

may be prescribed by law; and the Legislature
shall not have power to grant any relief to pur-
chasers thereof.  The Comptroller shall invest
the proceeds of such sales, and of those hereto-
fore made, as may be directed by the Board of
Education herein provided for, in the bonds of
the United States, the State of Texas, or counties
in said State, or in such other securities, and
under such restrictions as may be prescribed by
law; and the State shall be responsible for all
investments."

Without question the sale of minerals contained in
land is a sale of land.  Texas Co. v. Daugherty, 107 Tex. 226,
176 S. W. 717.

Since the minerals in question are Public Free School
lands, by express language of the Constitution they can only
be sold under such regulations, at such times, and on such
terms as may be prescribed by law.  To constitute a valid sale
of school lands, the regulations, the times, and the terms of
the sale must first be prescribed by the Legislature.  Chancey
v. State, 84 Tex. 529, 19 S. W. 706.

In Chancey v. State, it was stated by the Supreme Court:

"The public school lands can be sold only
'under such regulations, at such times, and on
such terms as may be prescribed by law.'"

And in Smisson v. State, 71 Tex. 222, 9 S. W. 112;
Theisen v. Robison, 117 Tex. 489, 8 S. W. (2) 646, and Greene
v. Robison, 117 Tex. 516, 8 S. W. (2) 655, it was stated that
the times, terms and regulations for sales of school land are
to be determined by the Legislature.

The Legislature in Article 5245 has wholly failed to
prescribe either the terms, the times or the regulations for
the sales of lands therein referred to.  Determination of the
times of the sale, fixing of the price and the manner of its
payment, and regulations to govern the sale are all absent
from Article 5245.  For three reasons we are of the opinion
that Article 5245 is ineffective to authorize the Governor to
sell lands or minerals belonging to the Public Free School
Fund.  To hold otherwise would be to ignore the mandatory re-
quirements of the Constitution which plainly state that the
Legislature shall prescribe the regulations, the times, and
the terms for the sale of such lands.

In Articles 5306-5337, as amended by House Bill 9 of

the 46th Legislature, and other statutes the Legislature has strictly observed the constitutional requirements in expressly providing for the sale of Public Free School lands. Those statutes fix the terms, the times and the regulations in detail governing the sale of Public Free School lands. It is our opinion that such statutes set forth the only procedure by which Public Free School lands may now be sold.

In 1930, in Conference Opinion No. 2815, a copy of which is hereto attached, addressed to Honorable Dan Moody, then Governor of Texas, this department made the identical ruling that is expressed in this opinion. Since 1930 the Legislature has not seen fit to amend Article 5245 or to enact additional legislation prescribing the terms, regulations and times for the sale of lands by the Governor for the purposes set forth in Article 5242. This, to us, is an additional indication that our construction of Article 5245 accords with the intention of the Legislature.

As we have held in this opinion that you are not authorized to sell the minerals in the land in question, it becomes unnecessary to answer the other inquiries contained in your letter.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By
        Robert E. Kepke
                Assistant


REK:BT:wc


APPROVED NOV. 23, 1940
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman